Good morning, Your Honors. Lawrence Hildas appearing for Plaintiff Alan Mark Liev, who is present in the courtroom up from San Francisco. First of all, we note that the standard for summary judgment is that the evidence is to be ruled on de novo as per McKinney v. Nielsen et al., etc., and that the motion and the summary judgment of the disputed facts should have been looked at and should now be looked at in the light most favorable to the plaintiff who is the non-moving party. If there is any dispute of those facts, the motion is to be and should have been denied. There is a great deal of dispute as to the facts in this case, and where there is not dispute, there is clear video evidence that validates and verifies the plaintiff's view of the case. The plaintiff was on the scene at a very small Aryan Nations march with a counter-protest on July 10, 1999, as a journalist, identified as a journalist, acting as a journalist, carrying a video camera, conducting interviews, etc. Journalists are given an extraordinary position of respect, authority, and privilege in this society. They are allowed to go into the White House for press conferences. They are allowed to go into many places that the general public is not, including to properly cross police lines as long as they do not interfere. The privilege for journalists has been upheld over and over in both their right to be places and their right to have their materials privileged. You have a flat-out prohibition in this local town that thou shalt not cross this yellow tape line. It's pretty clear, isn't it? Prohibition was passed two months before this demonstration. It was only ever enforced once, against the counter-demonstrators and against Mr. Leeve in this one case. Never used before, never used again. First of all, second of all... Maybe it was only violated once by Mr. Leeve and the counter-demonstrators. That's not true. There was a riot a month earlier at a car show where a police line was put up and no one was told... Is that in the record? ...that they were subject to arrest. Yes. It was a car show called Car de Lane a month prior to this event. So your claim is selective enforcement? Absolutely. In addition, we watched the videotapes last night. There are a dozen occasions where other journalists are shown on the tape much closer than Mr. Leeve. TV cameras for CREM 2, for Q6, for individual videographers from unknown entities were right in the middle of the police line, right in the middle of the demonstrators, much closer than Mr. Leeve ever was. One of them was told to move back. He very carefully backed away, precisely as Mr. Leeve did. He was not arrested. The law was only applied to Mr. Leeve. What do we have in the record about who told and what other cameramen were told? The videotape is... ...one camera that I could see nearer the ruckus than Mr. Leeve, but do we have any affidavit from that person? Do we have anything other than what shows on that videotape about that person? We don't know who those people were, but I will represent to you, watching the tapes, there are a dozen occasions where people are shown closer. There's a woman in purple who we have no idea the identity of, who shows up over and over again, standing between the police and the demonstrators. There's a woman who's all in white... Do we have anything in the record showing who directed the officer who first, who arrested Mr. Leeve to tell him to go back? We do. And the record shows that someone told this officer to go take action against Mr. Leeve. That's correct. That individual was Officer Carroll, who was standing next to him. What do we know about Officer Carroll's function in relationship to the rest of the people who crossed the barrier, including journalists? He didn't have a specific function. He did tell demonstrators to get back. He never interacted with another journalist, and that's clear from the video. It's clear from his deposition that he never told anyone else, and he walked over to... Only journalists or anyone else? Only journalists. He told demonstrators to get back, and he pointed Officer Kelly at Mr. Leeve and said, get him out of here, and that's clear on the tape. It appears to me that the officer who approached Mr. Leeve is some distance away from where the ruckus is on that camera. Is that correct? That is correct, because Mr. Leeve was in the distance. Only at that moment, Your Honor, he was moving around. That officer was all over the scene. He interacted with other individuals, but it is true that Mr. Leeve was some distance away, was not interfering, was simply getting the same kind of camera angle that the others were getting, but staying further back. And he was singled out. The only conclusion we can draw about him being singled out, he was told to leave. He complies, he backs up, but he says, I'm here as a legal witness. In other words, I have a right to be here, and for that, he's arrested. And there is a great deal of case law that says that you cannot arrest someone for verbally challenging the police. There's no dispute that he was complying with the order. He was told to leave. He, as a good journalist, moves away while he says, I'm here as a legal witness. But he wasn't moving in the direction of the tape. He was moving in a different direction. He did the same thing the other journalist did. He moved away from the scene. If the concern is that he's in the middle, he could be in the middle of a situation where the police are dragging people out of the crowd and arresting them, he moves away from that. He's still videotaping. He doesn't want to turn around, both because he's being confronted with a police officer and because he's doing his job. He was not, it was never said that he was arrested for not complying. The officer conceded in his deposition. He was complying, except for the fact that he challenged him, except for the fact that he said, I'm a legal witness. And the next thing on the tape is, legal witness, you're under arrest. And Kelly grabs him, wrestles him, throws him to the ground. Is there any evidence in the record about the, on your excessive force claim with respect to the cuffing or any cuff injury? Was there any blood? Was there any breaking of the skin? There was some breaking of the skin and there was bruising. There was no blood. Is that in the record? That is in the record, Your Honor. We have medical reports in the record that support that. So there is case after case that says you have a right to challenge the police as long as you're not interfering. McKinney v. Nielsen, Sergeant Nielsen of the Berkeley, California Police Department, McKinney's arrested for underlining while he's talking. And this court said specifically, I'm looking for the, that verbally confronting the police is a right all Americans have under the First Amendment. We submit that Mr. Leeve was only arrested because he said, I'm a legal witness and challenged in a very calm and polite way Officer Kelly's authority. But didn't Officer Kelly indicate, tell Mr. Leeve to go back across the tape and stand on the sidewalk where the other people were viewing? And didn't Mr. Leeve, instead of following that instruction, go back up the street, but stay in the street? He didn't tell him go back across the tape. He said, leave, which Mr. Leeve logically took to mean leave the scene. He did leave the scene. And the fact is, the police tape at that point is not there for its actual function. Its function, according to every officer, was to protect the parade route so that the parade could take place. The parade was gone. Counsel, you have about a minute left. Would you like to reserve or you may continue to use? That's fine. I would like to use about 30 seconds and then reserve. The tape evidence is also clear that the hold that Officer Lance, who was not trained in any way for this, admitted had never been trained in crowd control use, was not on his jaw, which in her affidavit she just says a pain hold. It is very clearly, and we watched it in slow motion, that she grabs him by the throat while he's already being restrained, while he's already being induced. He's already standing. She says she used it to make him stand. That was clearly excessive force. The pain compliance by Kelly was clearly excessive force, and there was no justification for the arrest, and I'll reserve my last 25 seconds. All right. Thank you, Counsel. Thank you. We'll hear from Mr. Adams. Yes. Good morning. May I please report, Counsel, just to correct a couple of things that were mentioned in Mr. Hildes' comments. There's nothing that I am aware of in the record regarding the Coeur d'Alene parade or event a few months before and what the police did during that particular event. There are, as far as I can tell, no medical records in the record regarding any injuries. I think the affidavits of Mr. Lee are in the record in which he discusses injuries. I think the evidence with respect to the wrist is that he went to Britain Memorial Hospital in Moscow the day after the arrest, was treated in the emergency room, x-rays. There was nothing found, and that he was not treated thereafter to the present day for any injuries, wrist, throat, or anything else. The affidavit suggests that he still has injury and pain post examination in the hospital. Correct. And it continues, so there is evidence in the record that, which is his affidavit, that he has pain. Correct. Lingering pain. Correct. I stand corrected. There are subjective comments by Mr. Lee, but there's no medical records, and he himself has stated in his deposition, which I think is before the court, that he's not been treated since that day after the parade. With respect to Erin Lance, the officer who applied what she calls the mandibular pressure point hold, the only person with any training or qualifications to describe police holds who has presented anything in the record before the court, she was trained. Her affidavit demonstrates that she went to the police academy and was hired and was acting as a police officer. Yes, she was in a probationary period, but that's a far cry from saying that she's not trained and not able to carry out functions of an officer. Counsel, Judge Lodge granted summary judgment. Correct. In this case, no trial. And you heard Mr. Hilda's comment that there are questions of fact. What's your response? The standard is not whether there are questions of fact. The standard is whether there are And the court cases, both from the Ninth Circuit and other cases, are replete with cases of excessive force in which summary judgment was granted and upheld on a number of issues. I do believe that the videotape, the affidavits of the officers, the record as a whole, does not demonstrate any material issue of fact on any of the claims before the court. Counsel, would it make a difference to this case legally if there were proof that the officer began the arrest in response to the claim of journalistic privilege as opposed to something else? I don't believe so, Your Honor. Why not? First of all, there is no general journalistic privilege. Well, no, the point is that if he is responding to what he says rather than to some other motivation. The case law on illegal arrest indicates quite clearly that there is no constitutional violation if an officer has probable cause to make the arrest. My question is a more narrow one. If there were evidence reasonably inferred from the record that it was what he said that provoked the action of the officer rather than his moving in one direction instead of another away from the scene, would that make a difference to this case? No. Because this Court must evaluate this type of claim on an objective basis, on an objectively reasonable basis, the mental state or the mental picture that an officer has. Counsel, the reason I ask that question is I looked at that tape very, very closely and look in terms of whether there's an issue of fact to be decided a relevant issue of fact. And I wanted to know the predicate that if that were proof of his motivation. If he'd said I arrested him because he had a smart mouth, clearly that would make a difference in this case, right? I'm not sure that it would. Okay. Well, I'm going to pursue this anyway. Okay. Isn't there a question of fact in the case inferred, if you take reasonable inferences, because we're here on summary judgment, you look at the officer and he accelerates immediately upon being told that I'm a legal witness. And they're quite a long way away, and there are lots of, well, there is at least one camera sticking right in the melee. The parade has moved on, so obviously you have to be relying on the fact that there's a ruckus going on at this point in order to be concerned. And isn't there some inference to be drawn that a jury could draw that it was what he said, rather than the claimed motivation, which we now have post hoc, was the reason why they took action, the action they did against him? I don't think that's a reasonable inference. I think it would be totally speculation. And that's why the courts have said that we don't look at the motivation behind an arrest. We look at the objective facts. Does an officer do that? We have testimony all the time about people's facial expressions, their expression of anger, the physical way they respond, those kinds of things in criminal cases, don't we? We may have. I'm not sure that that, again, goes to the issue of whether the officer objectively had probable cause to make the arrest. And there is, in this case, no doubt that the officer had probable cause to make the arrest. There is no journalistic privilege, general journalistic privilege, to violate a law that is admittedly constitutional. And it is clear from watching the tape that Mr. Lee intentionally ducked under the tape and went out into the middle of the street. This is a different situation than the cameraman who are standing on the curb and step off into the street and are told to go back. We have Mr. Lee, who is alone, as far as I can tell from the tape, standing in the middle of the street and then moving toward the blockade. And at that point is told to get back, as the chief judge in this case has said, he did not go back to where he came from. He did not go back to beyond the tape. He simply moved back, straight back, up the street to stay in that scene. Well, on that particular point, Mr. Hilda suggests, does he not, that Mr. Lee was trying to comply. He was responding to the order, get back. And he was getting back. He was probably going in a different direction. But he was getting, was he not backing away? He took a step back and then also in verbalizing that he was stating to the officer, I have a right to be here, essentially. And that's why I think the courts are very reluctant to get into the subjective, either on the part of the police officer or on the part of the. The Supreme Court in Harlow versus Fitzgerald has held squarely the subjective motivations are not to be considered in qualified immunity cases. Isn't that it? I'm sorry. Does that not end the issue? I think so. In terms of the excessive force, I don't have much time left here. I think there are cases, I've cited them in the brief from the Ninth Circuit, dealing with situations where pepper spray was used, where deadly force was used, and summary judgment was granted. And the courts have said, based on all of the facts, but also on the jurisprudence that officers have to make split-second decisions, and you can't, years after the event, in the comfort of the courtroom, make decisions as to precise line drawing regarding how much force is excessive or not. I think based on all of that, there is certainly, I think the summary judgment was proper. The videotape can be used. It has been used by the Eighth Circuit. A case called Wilson versus Spain involved a situation where there was a summary judgment based almost entirely on a videotape, and the Eighth Circuit affirmed that. So I think the situation is objective. Did the officer objectively have probable cause? Did the officer objectively use within the range of reasonableness in terms of force? If there are any other questions, I'd be happy to. Thank you, Counselor. Your time has expired. Mr. Hildas, you have a little bit of time left, about half a minute. First of all, it was not a split-second decision. Mr. Lee was away from the action. There was no urgency. He carefully kept his distance. Second of all, the Carter Lane incident is at length in the depot transcripts that are attached to our response to summary judgment as and. Third, 12 times between 4655 and 5014 and 137 and 150 on plaintiff's main videotape, you can see other journalists who are closer. There is a dispute as to fundamental material facts, and you do not need to go to subjective. If you objectively look at Officer Kelly's actions and what they responded to, you don't have to go into a state of mind. He moves forward. He tells Mr. Lee to leave. Mr. Lee complies. The only reason you can see that he is arrested and 12 other journalists are not is because he says, I'm a legal witness. Thank you, Counsel. Your time has expired. Thank you, Your Honor. The case just argued will be submitted for decision. And we will now hear argument in McFarland versus Norton.
judges: McKay , O'scannlain, Bea